### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

AVAID HOTEL, LLC D/B/A                          CIVIL NO. 21-1973
COUNTRY INN AND SUITES, LA

VERSUS                                          JUDGE S. MAURICE HICKS, JR.

ALLIED WORLD ASSURANCE                          MAGISTRATE JUDGE HORNSBY
COMPANY (US) INC., ET. AL.

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss filed by Allied World Assurance Company (US) Inc., Navigators Insurance Company, Navigators Specialty Insurance Company, Navigators Management CO Inc., Ategrity Specialty Insurance Company, Hudson Insurance Company, Swiss Re International SE, Amalgamated Insurance Underwriters LLC, and Aspen Specialty Insurance Company (hereinafter "the Defendants"). See Record Document 19. The Defendants seek dismissal of the Plaintiff Avaid Hotel, LLC d/b/a Country Inn and Suites, Louisiana's ("the Plaintiff") claims without prejudice for *forum non conveniens* to be refiled in New York state court. The Plaintiff opposes the Motion. See Record Document 27. For the reasons that follow, the Motion is **DENIED**.

### BACKGROUND

The Plaintiff filed the instant suit alleging counts of breach of insurance contract and bad faith against the Defendants pursuant to Louisiana Revised Statute §§ 22:1892 and 22:1973. The Defendants collectively provided insurance policies to the Plaintiff ("the policies") which covered the hotel property against all occurrences. Since July 2020, the Plaintiff has submitted three claims to the Defendants seeking insurance proceeds to repair damage exacted by a vehicle crash into the hotel, Hurricane Laura, and the

February 2021 winter storm. The Plaintiff alleges that although it acted promptly in submitting evidence of the damage and reporting the claims, the Defendants have either purposefully or negligently refused to compensate the Plaintiff.

The Plaintiffs claim the Defendants breached the policies when they 1) failed to compensate the Plaintiff for the damage recorded in its claims, 2) purposefully or negligently misrepresented to the plaintiff the terms and conditions of the policy, 3) failed to conduct the handling of the claims with good faith and fair dealing, 4) manipulated its pricing software to artificially suppress the cost of repairs below market value, and 5) failed to include adequate overhead and profit in its damages estimation. The Plaintiff also alleges the Defendants are liable for statutory bad faith penalties for failing to timely and adequately compensate the Plaintiff without probable cause.

The Defendants filed the instant Motion to Dismiss, requesting this Court dismiss the Plaintiff's suit without prejudice on the basis of *forum non conveniens* so that it may be refiled in the proper venue of New York state court pursuant to the insurance policies' mandatory forum selection clauses. See Record Document 20. The Plaintiff opposes the Motion. See Record Document 27.

## LAW AND ANALYSIS

The doctrine of *forum non conveniens* draws its support from a court's power "to prevent its process from becoming an instrument of abuse or injustice." In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1153-54 (5th Cir. 1987), vacated on other grounds sub nom. PanAm World Airways, Inc. v. Lopez, 490 U.S. 1032, 109 S.Ct. 1928 (1989). When deciding whether to dismiss a case for *forum non conveniens*, a court must determine whether there is an adequate alternative forum available to the parties. See

O'Keefe v. Noble Drilling Corp., 347 Fed. Appx. 27, 31 (5th Cir. 2009). If an alternative forum is both adequate and available, a court must then weigh a multitude of private and public interest factors to determine whether dismissal is proper. See id.

The private factors a court must weigh are "the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, need to view premises at issue, the enforceability of judgment if one is obtained, and all other practical problems that make trial of a case easy, expeditious and inexpensive." Dynamic Indus. v. Metlife-Am. Int'l Grp. -Arab Nat'l Bank Coop. Ins. Co., No. 21-748, 2021 U.S. Dist. LEXIS 242878, at *10 (E.D. La. Dec. 20, 2021), (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947), superseded on other grounds by statute, 28 U.S.C. § 1404(a), as recognized in Am. Dredging Co. v. Miller, 510 U.S. 443, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994)) (internal quotations omitted). The court must also assess the public interest factors of administrative difficulties, local interest, interest in trying a diversity case in a forum familiar with the law, the need to avoid unnecessary conflicts of law, and the unfairness to citizens for the purposes of jury duty. See id.

A court's analysis changes, however, when there is a forum selection clause in play. See id. at 11 (quoting Atl. Marine Constr. Co., v. United States Dist. Court, 571 U.S. 49, 63, 134 S.Ct. 568 (2013)). This new analysis hinges on a forum selection clause's validity. The clause is presumed valid unless the party attacking the clause can show it is unreasonable by proving "1) the forum selection clause was a product of fraud or overreaching; 2) the plaintiff will be 'deprived of his day in court' due to the grave inconvenience or unfairness of the agreed upon forum; 3) the fundamental unfairness of

the chosen law will deprive the plaintiff of a remedy; or 4) enforcement would contravene a strong public policy of the forum state." Id. at *11-12 (quoting Barnett v. DynCorp Int'l, L.L.C., 831 F.3d 296, 301 (5th Cir. 2016)).

The Defendants issued two commercial insurance property policies to the Plaintiff, one covering the period of November 2019 to November 2020, the other covering November 2020 to November 2021. Each policy contains the following clause:

**SECTION IX, Subsection F. Governing Law and Jurisdiction**

1. The laws of the State of New York, without regard to its conflict of laws rules that would cause the application of the laws of any other jurisdiction, shall govern the construction and interpretation of this POLICY.
2. The parties hereto do irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York, and to the extent permitted by law, the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

Record Documents 20-1 at 50 and 20-2 at 48. The Defendants contend that the policies' mandatory forum selection clauses dictate where the instant case must be tried. The Plaintiff argues that the clauses are unenforceable because they violate Louisiana public policy. They point to Louisiana Revised Statute § 22:868(A)(2), which explicitly prohibits application of the forum selection clause because, as the statute states,

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
  (1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
  (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.

La. R.S. § 22:868(A)(1)-(2). The Defendants counter by pointing to the Fifth Circuit Court of Appeals decision in Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp., 884 F.3d 540 (5th Cir. 2018), which held that the statute did not evince a public policy in Louisiana against the enforcement of forum selection clauses. The Defendants underscore the circuit court's opinion explaining that § 22:868(A) merely prohibits contract provisions that deprive Louisiana state courts of jurisdiction, not venue. See Al Copeland Invs. LLC, 884 F.3d at 543. "Section 22:868 says nothing about venue. As the district court recognized, venue and jurisdiction are separate and distinct." Id. at 544 (internal quotations omitted). The Defendants aver that this Court should follow the circuit court's reasoning.

However, this Court agrees with the Plaintiff that while the Fifth Circuit's interpretation of § 22:868(A) may have been correct in 2018, the Louisiana legislature answered the court's decision by promptly amending the statute in 2020 to include "venue" in the language. The Court believes this amendment clearly changes whether forum selection clauses, such as the one at issue here, are enforceable in Louisiana. "As always, the starting point in statutory interpretation is the 'language of the statute itself'." Al Copeland Invs. LLC, 884 F.3d at 543, (quoting Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev., 56 So.3d 181, 187-88 (La. 2011)) (citation omitted). The language of § 22:868(A)(2) is straightforward: forum selection clauses which deprive a Louisiana court of jurisdiction *or venue* are in violation of Louisiana law and policy thus rendering them unenforceable.[1]

---

[1] The Defendants, in their Reply, rely heavily on Judge Brown's reasoning in Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co., 501 F. Supp. 3d 378, 386 (E.D. La. 2020), where she narrowly interpreted the statute to not prohibit removal from Louisiana state court to federal court. This case is distinguishable from the instant matter because it is one of removal, not venue

In their Reply, the Defendants raise the new argument that § 22:868(A) is inapplicable in instances where the insurance contract or policy was not "delivered or issued for delivery" in the state of Louisiana. They contend such is the case here.[2] The Court requested additional briefing from both parties further explaining when "delivery" of an insurance policy occurs and the meaning of the phrase "delivered or issued for delivery." Additionally, the Court required the Plaintiff to instruct the Court on the relationship between the Plaintiff and the "first insured" Amalgamated Hospitality Management II, LLC ("Amalgamated Hospitality").

The Defendants maintain that they individually issued commercial insurance property policies to Amalgamated Hospitality for the terms of November 2019-2020 and November 2020-2021. See Record Document 52. For each, the Defendants explain that they communicated exclusively with CRC Group ("CRC"), a wholesale broker located in Jenkintown, PA. Each policy, when bound and ready for issuance, was delivered to CRC in Jenkintown. CRC ultimately transmitted the policy to Amalgamated Hospitality in Indianapolis, IN. The Defendants aver that they never delivered the policies to the Plaintiff or an insurance broker on the Plaintiff's behalf in the state of Louisiana. In support, the

---

transfer. While removal from state to federal court involves the Supremacy Clause of the United States Constitution, the present situation does not require such analysis and balancing. Similarly, the Court finds the case of AMJ Transp. Corp. v. BMO Harris Bank N.A., 2020 U.S. Dist. LEXIS 146889, at *4-5 (M.D. La. 2020) distinguishable because it does not deal with provisions of insurance contracts which would involve application of § 22:868(A)(2).

[2] The Defendants also point to subsection D which states that the statute "shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." La. R.S. § 22:868(D). They contend that their policies are issued by "non-admitted excess and surplus lines insurance," meaning they are not regulated by the Louisiana Department of Insurance. Record Document 32 at 8. The Court disagrees with the Defendants' reasoning. As was recently discussed by Judge Cain, "[t]he exception carved out in § 22:868(D) appears to be merely a recognition of the state's lack of regulatory authority over such policies," and does not mean that the policies lack the approval of the Louisiana Department of Insurance. Ram Krishana Inc. v. MT Hawley Ins. Co., No. 2:21-CV-03031, 2022 U.S. Dist. LEXIS 15975, at *5-6 (W.D. La. 01/27/22). Accordingly, this Court finds the Defendants' argument equally unconvincing.

Defendants offer declarations from Jason Mitchell, Director of Hudson Insurance Group, and Nanlini Doddapaneni, Senior Underwriter for Swiss Re Corporate Solutions. See Record Documents 53 & 53-1. They also attach copies of each individual policy issued to Amalgamated Hospitality and correspondence between CRC and Hudson Insurance Group stating CRC received binding authority from Amalgamated for the policies. See Record Documents 53-2-4 & 53-5.

The Plaintiff explains that both policies were issued to them by Amalgamated Insurance Underwriters, LLC ("AIU"), who served as a managing general underwriter for the policies. Similarly, Amalgamated Hospitality functioned as the "managing general agent for and direct affiliate of AIU." The Plaintiff maintains that AIU was the broker or agent granted underwriting authority by the Defendant insurers and Amalgamated Hospitality acted as an agent or broker for the insurers in addition to serving as an "intermediary between carriers and agents, and/or insureds." Record Document 54 at 3. The Plaintiff argues AIU and Amalgamated Hospitality operated on the insurers' behalf when they delivered the policies to the Plaintiff in Louisiana. The Plaintiff's summarize that "AIU has agency with AHM, and AHM has agency with CRC, and CRC has agency with the Defendants, therefore, CRC, AIU and AHM are all in an agency relationship with and in service to the Defendants…." Record Document 54 at 4. They conclude that the policies were not "delivered" until they were transferred from AIU to the Plaintiff.

There are three requirements in order for a policy to be delivered: "(1) whether the company or its agent intentionally parts with control or dominion of the policy; (2) whether the company or its agent places the policy in control or dominion of the insured or some person acting for him; (3) the underlying purpose of the delivery is to make valid and

binding a contract of insurance." McDermott Int'l, Inc. v. Lloyds Underwriters of London, 120 F.3d 583, 586 (5th Cir. 1997) (internal quotation marks omitted). The instant parties only dispute the second prong of the McDermott test. The Louisiana Supreme Court echoes this analysis explaining that the delivery of an insurance policy is not dependent on the actual, physical delivery to the insured, but rather, is based "upon the intention of the parties as manifested by their acts or words," and whether the insurance company places the policy within the control of the insured or "some person acting for him" making the contract valid. John v. Gourmet Pizzas, Inc., 2000-0749 (La. App. 4 Cir. 01/31/01), 778 So. 2d 1223, 1226 (quoting Pruitt v. Great Southern Life Ins. Co., 12 So. 2d 261, 202 La. 527 (La. 1942)).

The Court finds the Defendants' "delivery" argument convincing for a number of reasons. First, the Defendants' declarations from Jason Mitchell, Director of Hudson Insurance Group, and Nanlini Doddapaneni, Senior Underwriter for Swiss Re Corporate Solutions attest they communicated solely with CRC when underwriting the policies and ultimately delivered them from CRC to Amalgamated Hospitality in Indiana. See Record Documents 53 & 53-1.[3] The Defendants had no communication with the Plaintiff and thus could not have intended delivery of the policy to the Plaintiff. Second, Amalgamated Hospitality is listed as the only insured on all policies.  What's more, the policies describe the "first insured" as

> Amalgamated Hospitality Management II, LLC and any subsidiary, and Amalgamated Hospitality Management II, LLC interest in any partnership or joint venture in which Amalgamated Hospitality Management II, LLC has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may

---

[3] The Court notes the Defendants' argument that the policies were delivered to CRC in Pennsylvania. The Court finds that even if this is the case, the result remains the same. The policies were not intended to be nor actually delivered to Louisiana.

appear; all hereafter referred to as the Insured, including legal representatives.

Record Document 20-2 at 8, 53-3 at 7. The Court reads this description to mean that the policies are intended for Amalgamated Hospitality and any property owned, controlled, or operated by it. Though the relationship between Amalgamated Hospitality Management and the Plaintiff remains unclear to the Court, it is inferred that the Plaintiff's property is under the management control or ownership of Amalgamated Hospitality. It follows that once Amalgamated received the policies, the transaction was complete, and the policies went into effect. In fact, the letter from the Assistant Vice President of CRC provided by the Defendants states CRC "received the order to bind Amalgamated Hospitality Management, Inc." effective November 2019. Third, the Defendants correctly note that the policies can only be cancelled by either the insurance company or the first insured, Amalgamated Hospitality. Lastly, the Court looks to the reasoning of the Fifth Circuit Court of Appeals in Auster Oil & Gas, Inc. v. Stream, which underscored that Louisiana Revised Statute 22:873 requires only that "every policy shall be delivered to the insured *or* to the person entitled thereto…." 891 F.2d 570, 574 (5th Cir. 1990) (emphasis added). It is enough that the policies were delivered to Amalgamated Hospitality in Indiana as the "insured." The Plaintiff may be entitled to the policies' coverages, but delivery was complete upon receipt by Amalgamated Hospitality. Having reached these conclusions, the Court finds that the policies' forum selection clauses are valid.

However, regardless of the applicability of the forum selection clauses, the Court believes the public interest factors require this litigation be maintained in the state of Louisiana. Again, the factors include the administrative difficulties from court congestion, the local interest, the interest in trying a diversity case in a forum familiar with the law, the

need to avoid unnecessary conflicts of law, and the unfairness to citizens for the purposes of jury duty. Dynamis Indus., at *23 (quoting Atl. Marine Constru. v. United States Dist. Court, 571 U.S. 49, 51 134 S.Ct. 568 (2013)). The burden is on the challenger of the transfer, the Plaintiff, to prove that the factors "overwhelmingly disfavor transfer." Id.

Factor one requires the Court to assess the relative workloads of the two proposed forums. The Defendants underscore that as of June 2021, a few months before this Motion was filed, the Western District of Louisiana was the third busiest federal district by caseload in the United States where the federal districts in New York ranked lower. See Record Document 20 at 14. They support their argument by pointing to the National Judicial Caseload Profile. See Record Document 20-3. After reviewing the documents filed by the Defendants, the Court reaches a different conclusion. The Western District of Louisiana with only 3,673 cases is hardly more congested than any of New York's federal districts whose caseloads in three of four districts total well over 4,000. See Record Document 20-3. Thus, the Court believes this factor favors maintaining the litigation in Louisiana.

The second public interest factor also tips the scales in favor of maintaining the litigation in Louisiana. This case centers on whether the Plaintiff is entitled to coverage for damages sustained by its hotel property situated in Louisiana. Louisiana courts clearly have a stronger interest in deciding this matter given that all alleged damages occurred in the state as result of Hurricane Laura, the February 2021 freeze, and a vehicular crash. The facts of this case have no connection to New York. Rather, this is a fact-intensive inquiry revolving around three separate occurrences to real property situated in Louisiana.

The Defendants contend, however, that even with the local interest, the choice of law public interest factors point to dismissal because the choice of law provisions included in the Plaintiff's policies require application of New York law. While this Court may be required to conduct a conflict of laws analysis, the Court believes these factors are heavily outweighed by the interests of Louisiana jurors in keeping the litigation in the situs state. As previously noted, this case has no connection to New York. The Plaintiff's property is not located in New York and the damages did not occur in New York. A Louisiana juror's interest in an insurance dispute involving a Louisiana insured and the storm and vehicular damage inflicted on the Louisiana property is superior to that of a New York juror who has no relation to the parties and is unconcerned with the natural disasters that affected this region of the state. See DTEX, LLC v. BBVA Bancomer, S.A., 512 F. Supp. 2d 1012, 1029 (S.D. Tex. 2007), affirmed by DTEX, LLC v. Bancomer, S.A., 508 F.3d 785 (5th Cir. 2007). Ultimately, the Court believes that the superior interests of the state of Louisiana and its citizens in litigating this matter involving a Louisiana insured and Louisiana-situated property dominate the Court's analysis and require a finding in favor of maintaining this litigation in the Western District of Louisiana.

## CONCLUSION

The Court finds that because the policies at issue were not "delivered or intended for delivery in Louisiana," the forum selection clauses are applicable to the instant matter. However, the Court further finds that because the property is located in Louisiana and the damages at issue occurred in Louisiana, the public interest factors weigh in favor of maintaining the litigation in Louisiana.

Accordingly,

**IT IS ORDERED** that the Defendants' Motion to Dismiss for *Forum Non Conveniens* be **DENIED**.

An order consistent with the foregoing memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 23rd day of August, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT